IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Willis Bennett, ) | |
| ) | Civil Action No. 3:06-499-PMD-JRM |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | |
| John J. LaManna, Warden, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Respondent. ) | |

Petitioner, Willis Bennett ("Bennett"), filed his pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241[1] while he was an inmate at FCI-Edgefield. Respondent filed a motion to dismiss or, in the alternative, for summary judgment on April 21, 2006. Because Bennett is pro se, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued on April 25, 2006. Bennett filed his response on June 1, 2006.

**Background**

Bennett has a long, violent criminal history. His claims involve the interplay between parole guidelines of the Board of Parole of the District of Columbia ("the Board") and the U.S. Parole Commission ("the Commission"). As a starting point, it is helpful to outline Bennett's journey through the criminal justice system. The record shows:

1. In October of 1977, Bennett was sentenced by the Superior Court for the District of Columbia to 10-30 years imprisonment for burglary and second degree robbery, plus a one year concurrent sentence for petit larceny. (Res. Mem., Ex. A.).

---

[1]The case was automatically referred to the undersigned pursuant to Local Rule 73.02(B)(2)(c), DSC.

2. On August 24, 1987, Bennett was paroled from USP, Leavenworth, KS by the Commission with 7,003 days remaining on his sentence, i.e., until October 26, 2006 (Res. Mem., Ex. B).

3. In October of 1987, Bennett violated his parole and he was arrested. (Res. Mem., Ex. C).

4. On July 11, 1988, Bennett's parole was revoked by the Commission using the Board's guidelines. (Id.)

5. On March 23, 1990, Bennett was paroled a second time from FCI-EI Reno by the Commission with 6,258 days remaining on his sentence, i.e., until May 11, 2007. (Res. Mem., Ex. D).

6. In July of 1990, Bennett violated his parole, and he was arrested. (Res. Mem., Ex. E).

7. On November 16, 1990, Bennett's parole was revoked by the Commission using the Board's guidelines. (Id.)

8. On June 28, 1991, Bennett was paroled a third time from FCI-Jesup, GA by the Commission with 5934 days remaining on his sentence, i.e., until September 26, 2007. (Res. Mem., Ex. F).

9. On September 6, 1991, Bennett shot an individual in Washington, D.C. The victim died on September 13, 1991. (Res. Mem., Ex. H).

10. A parole violation warrant was issued by the Commission on September 16, 1991. (Res. Mem., Ex. G).

11. Bennett was arrested for murder on November 23, 1991. (Res. Mem., Ex. H).

12. On July 16, 1992, Bennett pled guilty to "manslaughter while armed" in the Superior Court of the District of Columbia and was sentenced to a term of imprisonment of 10-30 years. (Res. Mem., Ex. I).

13. The Commission issued a parole violation warrant for the initial burglary/robbery sentence based on the manslaughter conviction. (Res. Mem., Ex. J).

14. The Board ordered that a parole violation warrant be maintained as a detainer on September 19, 1995. (Res. Mem., Ex. K).

15. The Commission conducted a "D.C. Initial [Parole] Hearing" for the manslaughter conviction on February 4, 1998, at USP Leavenworth. It was noted that the violation of parole warrant for the burglary/robbery sentence had not been executed, but remained as a detainer. Parole was denied on the manslaughter conviction, and Bennett was scheduled for a rehearing in February 2000. The Commission stated, "(y)our parole violator warrant shall be executed and a violator hearing scheduled when you are paroled or mandatorily released to the violator term of your original D.C. Code adult sentence." The Board's guidelines were used to determine Bennett's status. (Res. Mem., Ex. L).

16. The Commission again denied parole on the manslaughter conviction on April 1, 1998. The stated reason was:

> You have a score of 4 points under the District of Columbia parole guidelines. Those guidelines indicate that parole should not be granted at this time. After consideration of all factors and information presented, a departure from the guidelines at this consideration is not found to be warranted. (Res. Mem., Ex. M).

17. On April 25, 2000, the Commission again denied Bennett parole on the manslaughter conviction employing the Board's guidelines. (Res. Mem., Ex. N). An amended Notice of Action was issued on May 17, 2001, restating the reasons for denial of parole, again citing the Board's guidelines. The reason stated was:

> Your previous score under the District of Columbia parole guidelines was 4. With adjustments reflecting your institutional record since

>
> your last hearing, your current score is 3. You continue to be scored under the 1987 guidelines of the D.C. Board of Parole. Those guidelines of the D.C. Board of Parole indicate that parole should be granted at this time. However, a departure from the guidelines and the rehearing guidelines at this consideration is found warranted because you are a more serious risk than your grid score indicates. The current offense represents repetitive and ongoing assaultive behavior. You have two prior convictions for Robbery and another conviction for Carrying a Pistol Without a License. In 1976, you committed an armed robbery and residential burglary. You were paroled and returned two times as a parole violator on the 1976 Armed Robbery and Residential Burglary case before being reparoled a third time when within 70 days you committed the instant murder. The murder offense demonstrated extreme homicidal vindictiveness. You concealed a gun behind your back and then walked up to the victim with whom you had a disagreement and proceeded to shoot him in the fact at point blank range, killing him. In that you represent such a threat to commit future acts of violence (not withstanding your current medical condition), the Commission believes that only through an extended prior of confinement will your (sic) be prevented from continuing to commit murderous criminal acts in the community. (Res. Mem., Ex. O).

18. By the end of 2004, Bennett had arrived at FCI-Edgefield. On December 21, 2004, the Commission issued a "Notice of Action":

> To determine whether violator term in CR 111337-76 is filed as a detainer or has already commenced as is indicated in the current computation data. And to determine what Commission guidelines apply at the next hearing.[2] (Res. Mem., Ex. P).

19. In a "Memo to File" dated January 4, 2005, the Commission noted that BOP had corrected Bennett's parole computation "to reflect that the U.S. Parole Commission has filed a detainer for parole violation that has yet to be executed. This detainer is based on the Commission's warrant dated 9/16/91." The memo discussed the application of the Commission's

---

[2]As discussed in detail below, the Commission had entirely replaced the Board and questions had arisen as to whether the old guidelines of the Board or newly formulated guidelines of the Commission applied to Bennett and others in his circumstance.

4

guidelines instead of the guidelines of the Board based upon the detainer. The memo concluded:

> I am referring this case to an examiner for completion of a pre-hearing assessment. However, before completion of a full pre-hearing assessment, the examiner should refer this case to a Commissioner with a recommendation to either (1) order that the rehearing scheduled for March 2005 be conducted as a combined rehearing/dispositional revocation hearing applying the guidelines of 28 C.F.R. §2.80 or (2) Withdraw the detainer warrant dated 9/16/91. This decision re: this matter will determine the appropriate guideline to apply at the upcoming hearing. (Res. Mem., Ex. Q).

20. A hearing was conducted by the Commission at FCI-Edgefield on January 10, 2005, and a combined parole/reparole hearing was scheduled for March of 2005 at which the guidelines at 28 C.F.R. § 2.80 were to be applied. (Res. Mem., Ex. R).

21. The hearing was held on August 2, 2005. The examiner reviewed the facts of Bennett's manslaughter conviction, a series of institutional infractions, and made the following recommendation:

> Execute the U.S. Parole Commission's warrant currently lodged as a detainer upon your release from your new sentence (via parole or mandatory release) or your parole from your violator term, whichever comes first. Revoke parole. None of the time spent on parole shall be credited. Continue for a reconsideration hearing on both the current sentence and violator term in 8-10 after the service of 60 months from your hearing dated of 8-2-05. (Res. Mem., Ex. S)

22. Based on the recommendation of the hearing examiner, the Commission issued a "Notice of Action, DC Combined Initial Dispositional Revocation" denying parole on Bennett's manslaughter conviction. (Res. Mem., Ex. T).

23. Bennett appealed the decision of the Commission. (Res. Mem., Ex. U).

24. On January 20, 2006, the Commission affirmed the decision to deny parole stating:

> You (sic) appeal the Commission's decision on the ground that the Commission incorrectly applied guidelines to your case which are not found in the D.C. Municipal Regulations.
>
> There is no merit to your claim that the Commission applied incorrect guidelines to your case. The National Capital Revitalization and Self-Government Improvement Act of 1997, which gave the Parole Commission exclusive jurisdiction over all D.C. felony prisoners, authorized the Commission to "amend or supplement" the parole regulations of the District of Columbia as it sees fit. The Commission has committed no error in applying the guidelines to your case.
>
> You also claim that you have not received credit for time in custody because the Commission has failed to execute the parole violator warrant. There is no merit to your claim. The law is well settled that the Commission has the discretion to have its warrant executed or to have it remain as a detainer when a parolee is serving a new sentence for a crime committed while on parole. See Moody v. Daggett, 429 U.S. 78 (1976); Jones v. Jackson, 416 A.2d 249 (D.C. 1980). The time that you served on the new sentence had been credited towards the service of the guidelines that the Commission has determined you are required to serve for your parole violation behavior. To also award you credit towards the service of the balance of your original sentence would amount to granting you double credit for the time in custody.
>
> All decisions by the National Appeals Board on appeal are final. (Res. Mem., Ex. T).

## **Discussion**

Bennett's claims necessarily arise from the denial of his parole for the manslaughter conviction on August 23, 2005. (Res. Mem., Ex. T). The claims are not clearly stated, but they boil down to a primary assertion: the Commission violated the Ex Post Facto Clause by using its guidelines ( 28 C.F.R. § 2.80) instead of the guidelines of the Board in denying him parole. In this regard, Bennett asserts that the Board's guidelines have never been repealed and should apply to him. He argues that the Commission wrongfully "mixes/uses Federal Guidelines with D.C. Guidelines in determining D.C. Code parole eligibility/suitability which they have cleverly adopted

in CFR § 2.70 thru 2.107." Petition, p. 6. Bennett also asserts that the Commission's delay in executing the parole violation warrant violated his Fifth Amendment right to due process.

### 1. Ex Post Facto Claim

When Bennett was sentenced for manslaughter in 1992, parole decisions for D.C. offenders were made by the Board according to its 1987 guidelines. "Under these guidelines, the Board had discretion to grant parole after a prisoner's minimum sentence had been served if it found 'a reasonable probability that [the] prisoner will live and remain at liberty without violating the law, [and] that his release is not incompatible with the welfare of society.'" Glascoe v. Bezy, 421 F.3d 543, 544 (7th Cir. 2005). The 1987 guidelines required the Board to consider such factors as the nature of the offense of conviction and institutional behavior in arriving at its parole determination. Id. However, the Board retained discretion as to whether or not parole would be granted. See D.C. Mun. Regs. tit. 28 §§ 200.1, 204.22 (1987); Ellis v. District of Columbia, 84 F.3d 1413, 1415 (D.C.Cir. 1996); Fletcher v. Reilly, 433 F.3d 867, 871 (D.C. Cir. 2006); and Anderson-El v. U.S. Parole Commission, 2006 WL 2604723 (S.D.N.Y. 2006) (unpublished). Congress transferred from the Board to the Commission authority over "any imprisoned felon who is eligible for parole...under the District of Columbia Code by the National Capital Revitalization and Self-Government Improvement Act of 1997 ("the Revitalization Act"). The Board was abolished on August 5, 1998, and the Commission was vested with "exclusive authority to amend or supplement any regulation interpreting or implementing the parole laws of the District of Columbia with respect fo felons, provided that the Commission adheres to [statutory] rulemaking procedures...." See D.C. Code § 24-131(b) and Fletcher, 433 F.3d at 870.

The Commission developed and implemented new guidelines for D.C. offenders. See 28 C.F.R. § 2.70 et. seq. The Commission's new provisions incorporated, but expanded, the Board's "salient factor score" ("SFS") contained in its 1987 guidelines. Under the 1987 guidelines, the Board calculated the SFS based on point values attributed to pre- and post-incarceration factors, and used the total score "to assess the degree of risk posed by the parolee." See D.C. Mun. Regs. tit. 28 § 204.3. Under the guidelines promulgated by the Commission, the SFS was calculated using the expanded list of pre- and post-incarceration factors to find a base point score, from which the Commission calculated a "total guideline range," which projected the total time a prisoner would expect to be incarcerated. See 28 C.F.R. § 2.80(h). Even though the process and calculations are somewhat different, the Commission's new guidelines incorporated the Board's focus on rehabilitation in arriving at parole decisions. Fletcher, 433 F.3d at 871. As was the case under the Board's guidelines, the Commission retained discretion in applying its new guidelines and making parole determinations.

It is clear that the Board's guidelines were repealed as of August 5, 2000, and that they have been lawfully replaced by guidelines promulgated by the Commission. Fletcher, 433 F.3d at 870-72. Additionally, courts have routinely rejected ex post facto claims of D.C. offenders whose convictions occurred before implementation of the Commission's guidelines and became eligible for parole after their implementation. Bryant v. Williamson, 2007 WL 210792 (M.D.Pa. 2007) (unpublished) ("any ex post facto claim based on entitlement to application of the 1987 D.C. guidelines is without merit"); Wells v. Reilly, 2006 WL 3518586 (D.N.J. 2006) (unpublished); Anderson v. United States Parole Commission, 2006 WL 2604723 (S.D.N.Y. 2006); Brown v. Williamson, 2006 WL 1896166 (M.D.Pa. 2006) (unpublished) (no ex post facto violation because

the Commission's modifications substantially incorporate factors previously used by the Board); Terry v. Reilly, 2006 WL 1133888 (N.D.W.Va. 2006 (unpublished) ("The guidelines set forth in 28 C.F.R. § 2.80 and use the salient factor score, are consistent with D.C. law"); and McKissick v. United States Parole Commission, 295 F. Supp. 2d 643, 648-49 (S.D.W.Va. 2003) (Commission's calculation of SFS does not violate ex post facto clause), *aff'd*, 67 Fed. Appx. 824, 2003 WL 21465458 (unpublished).

After the passage of the Revitalization Act, the Commission promulgated parole guidelines for D.C. offenders (28 C.F.R. § 2.80). The courts have consistently held that these new guidelines do not violate the ex post facto clause because they retain the rehabilitative and discretionary aspects of the former guidelines of the Board. The United States District Court for the District of Columbia made this clear in Fletcher v. Reilly, supra. In that case, the court recognized a potential ex post facto issue with respect to **reparole** of D.C. offenders under 28 C.F.R. § 2.87 because that section failed to incorporate the rehabilitative focus of the Board's guidelines. Therefore, the undersigned concludes that Bennett has failed to show an ex post factor violation in the Commission's failure to show an ex post facto violation in the Commission's failure to grant him parole on his manslaughter conviction.

### 2.     Due Process Claim

Bennett asserts that the Commission violated his Fifth Amendment right to due process "when in 1991 they elected to disregard the necessity of a probable cause hearing to determine the validity of my status as a parole violator and whether the charges were substantial enough to warrant a violation of parole." (Petition, p. 7). He states that he did not receive a hearing on his parole violation until 2005. Id.

In <u>Morrissey v. Brewer</u>, 408 U.S. 471 (1972), the Supreme Court held that minimal due process requirements applied to parole revocation. The court established that a person arrested for a parole violation was entitled to a reasonably prompt probable cause determination and a revocation hearing after notice, before a neutral panel at which time he could confront witnesses and present evidence. However, in a later case, <u>Moody v. Daggett</u>, 429 U.S. 78 (1976), the Court held that an alleged parole violator is not entitled to a prompt hearing where the parole warrant is filed as a detainer at the institution where the alleged violator is being held. The Commission complied with its regulations concerning the parole violation warrant when it gave him the "Combined Initial/Dispositional Revocation" on August 2, 2005. (Res. Mem. Ex. 5). Bennett has not shown a due process violation.

## Conclusion

Based on a review of the record, it is recommended that respondents' motion to dismiss or, in the alternative, for summary judgment be granted, and the petition dismissed without an evidentiary hearing.

                                                        Respectfully submitted,

                                                        s/Joseph R. McCrorey
                                                        United States Magistrate Judge

February 20, 2007
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).