IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Willis Bennett,                         )<br>                                                 )<br>               Petitioner,           )<br>                                                 )<br>v.                                             )<br>                                                 )<br>                                                 )<br>John J. LaManna, Warden,    )<br>                                                 )<br>                                                 )<br>               Respondent.         )<br>_____) | C.A. No.: 3:06-499-PMD-JRM<br><br><br>**ORDER** |

This matter is before the court upon Petitioner Willis Bennett's ("Bennett" or "Petitioner") petition for habeas corpus relief pursuant to 28 U.S.C. § 2241. The Record contains a Report and Recommendation ("R&R") of a United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge's R&R recommends granting Respondent's Motion to Dismiss, or in the alternative, for Summary Judgment. A party may object, in writing, to an R&R within ten days after being served with a copy of the R&R. 28 U.S.C. § 636(b)(1). Bennett filed timely objections to the R&R.

## BACKGROUND

In the R&R, the Magistrate Judge outlined Bennett's journey through the criminal justice system. (*See* R&R at 1-6.) As the Magistrate Judge noted, Petitioner "has a long, violent criminal history." (R&R at 1.) On October 19, 1977, Petitioner was sentenced, in the Superior Court for the District of Columbia, to (1) ten to thirty years for burglary, (2) five to fifteen years for robbery, and

1

(3) one year for petit larceny.[1]  (Resp't Mot. to Dismiss Ex. A.)  He was released on parole on August 24, 1987 but taken back into custody for a parole violation in October of 1987.  On July 11, 1988, the United States Parole Commission (the "Commission") revoked his parole pursuant to the guidelines of the Board of Parole of the District of Columbia (the "Board").

Bennett was released for parole again on March 23, 1990, but in July 1990, he was again arrested for violating the terms of his parole.  The Commission revoked Bennett's parole on November 16, 1990, using the Board's guidelines.  He was paroled a third time on June 28, 1991, and on September 6, 1991, he shot an individual in Washington, D.C. The Commission issued a parole violation warrant on September 16, 1991, and Bennett was arrested for murder shortly thereafter on November 23.  Petitioner pled guilty to "manslaughter while armed" in the Superior Court of the District of Columbia and was sentenced on July 16, 1992 to a term of imprisonment of ten to thirty years.  (Resp't Mot. to Dismiss Ex. I.)  On August 10, 1992, the Commission supplemented its parole violator warrant to reflect Petitioner's manslaughter conviction, and the Board ordered that a parole violation warrant be maintained as a detainer on September 19, 1995. (Resp't Mot. to Dismiss Ex. J & K.)

A District of Columbia Initial Parole Hearing was held on February 4, 1998 for the manslaughter conviction.  The Commission noted that the violation of parole warrant for the burglary/robbery sentence had not been executed but remained as a detainer.  (Resp't Mot. to Dismiss Ex. L.)  The Commission denied parole on the manslaughter conviction and scheduled a

---

[1] These sentences run concurrently.  In the R&R, the Magistrate Judge noted Bennett was "sentenced . . . to 10-30 years imprisonment for burglary and second degree robbery, plus a one year concurrent sentence for petit larceny."  (R&R at 1.)  Petitioner describes his sentence as the court describes it in this Order.  For purposes of this Order, however, the distinction is not material.

rehearing for February 2000. The Commission stated, "Your parole violator warrant shall be executed and a violator hearing scheduled when you are paroled or mandatorily released to the violator term on your original D.C. Code adult sentence." (Resp't Mot. to Dismiss Ex. L.) The Commission again denied parole on the manslaughter conviction on April 1, 1998, noting Petitioner had "a score of 4 points under the District of Columbia parole guidelines," a score which indicated parole should not be granted at that time. (Resp't Mot. to Dismiss Ex. M.)

The Commission again denied parole on the manslaughter conviction on April 25, 2000. The Commission's report states,

> Your previous score under the District of Columbia parole guidelines was 4. With adjustments reflecting your institutional record since your last hearing, your current score is 3. You continue to be scored under the 1987 guidelines of the D.C. Board of Parole. Those guidelines of the D.C. Board of Parole indicate that parole should be granted at this time. However, a departure from the guidelines and the rehearing guidelines at this consideration is found warranted because you are a more serious risk than your grid score indicates. The current offense represents repetitive and ongoing assaultive behavior. You have two prior convictions for Robbery and another conviction for Carrying a Pistol Without a License. In 1976, you committed an armed robbery and residential burglary. You were paroled and returned two times as a parole violator on the 1976 Armed Robbery and Residential Burglary case before being reparoled a third time when within 70 days you committed the instant murder. The murder offense demonstrated extreme homicidal vindictiveness. You concealed a gun behind your back and then walked up to the victim with whom you had a disagreement and proceeded to shoot him in the face at point blank range, killing him. In that you represent such a threat to commit future acts of violence (notwithstanding your current medical condition), the Commission believes that only through an extended period of confinement will you be prevented from continuing to commit murderous criminal acts in the community.

(Resp't Mot. to Dismiss Ex. O.)[2] The Commission stated Bennett was scheduled for a rehearing in February 2005. (Resp't Mot. to Dismiss Ex. N.)

---

[2]The language in Exhibit O is from a Notice of Action dated May 17, 2001. This Notice of Action is to correct the language in the Notice of Action dated April 25, 2000 so that the wording conforms to the actual wording the Commission approved at the time of its decision.

3

On December 21, 2004, the Commission issued a "Notice of Action" in order to determine "whether violator term in CR111337-76 is filed as a detainer or has already commenced as is indicated in the current computation data" and "to determine what Commission guidelines apply at the next hearing."[3] (Resp't Mot. to Dismiss Ex. P.) In a "Memo to File" dated January 4, 2005, the Commission noted that the Bureau of Prisons "recently corrected the sentence computation in the . . . case to reflect that the U.S. Parole Commission has filed a detainer for parole violation that has yet to be executed. This detainer is based on the Commission's warrant dated 9/16/91." (Resp't Mot. to Dismiss Ex. Q.) This memorandum discussed the application of the Commission's guidelines instead of the Board's guidelines based on the detainer. The memorandum concluded,

> I am referring this case to an examiner for completion of a pre-hearing assessment. However, before completion of a full pre-hearing assessment, the examiner should refer this case to a Commissioner with a recommendation to either (1) order that the rehearing scheduled for March 2005 be conducted as a combined rehearing/dispositional revocation hearing applying the guidelines at 28 C.F.R. § 2.80 or (2) Withdraw the detainer warrant dated 9/16/91. This decision re: this matter will determine the appropriate guideline to apply at the upcoming hearing.

(Resp't Mot. to Dismiss Ex. Q.)

In a "Notice of Action" dated January 10, 2005, the Commission noted that a combined parole/reparole hearing was scheduled for March 2005, at which the guidelines at 28 C.F.R. § 2.80 were to be applied. (Resp't Mot. to Dismiss Ex. R.) A hearing was held on August 2, 2005, and the examiner made the following recommendation:

> Execute the U.S. [P]arole Commission's warrant currently lodged as a detainer upon your release from your new sentence (via parole or mandatory release) or your parole

---

[3]As Magistrate Judge McCrorey noted, "the Commission had entirely replaced the Board and questions had arisen as to whether the old guidelines of the Board or the newly formulated guidelines of the Commission applied to Bennett and others in his circumstance." (R&R at 4 n.2.)

> from your violator term, whichever comes first. Revoke parole. None of the time spent on parole shall be credited. Continue for a reconsideration hearing on both the current sentence and violator term in 8-10 after the service of 60 months from your hearing dated of 8-2-05.

(Resp't Mot. to Dismiss Ex. S.) The Commission concurred with the recommendation, denied parole on the manslaughter conviction, and informed Petitioner of this decision in a "Notice of Action" dated August 23, 2005. (Resp't Mot. to Dismiss Ex. T.) The Notice explained a warrant was to be executed on his release from his new sentence, that his parole was revoked, and that he was continued for a reconsideration hearing on both the current sentence and the violator term in August 2010. (Resp't Mot. to Dismiss Ex. T.)

Bennett appealed the Commission's decision to the Commission's National Appeals Board. Bennett argued, *inter alia*, that the Commission erred in applying federal parole procedures because he is a D.C. Code Offender; he argued that the Commission "used/mixed both D.C. and Federal guidelines" to arrive at the decision in the Notice of Action dated August 23, 2005. (Resp.'t Mot. to Dismiss Ex. U.) On January 20, 2006, the Commission affirmed the decision to deny parole:

> You appeal the Commission's decision on the ground that the Commission incorrectly applied guidelines to your case which are not found in the D.C. Municipal Regulations.
> There is no merit to your claim that the Commission applied incorrect guidelines to your case. The National Capital Revitalization and Self-Government Improvement Act of 1997, which gave the Parole Commission exclusive jurisdiction over all D.C. felony prisoners, authorized the Commission to "amend or supplement" the parole regulations of the District of Columbia as it sees fit. The Commission has committed no error in applying the guidelines to your case.
> You also claim that you have not received credit for time in custody because the Commission has failed to execute the parole violator warrant. There is no merit to your claim. The law is well settled that the Commission has the discretion to have its warrant executed or to have it remain as a detainer when a parolee is serving a new sentence for a crime committed while on parole. See <u>Moody v. Daggett</u>, 429 U.S. 78 (1976); <u>Jones v. Jackson</u>, 416 A.2d 249 (D.C. 1980). The time that you served on the new sentence had been credited towards the service of the guidelines that the Commission has determined you are required to serve for your parole

5

> violation behavior. To also award you credit towards the service of the balance of your original sentence would amount to granting you double credit for the time in custody.

(Resp't Mot. to Dismiss Ex. V.)

Bennett filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on February 27, 2006. Respondent filed a Motion to Dismiss, or in the alternative, for Summary Judgment, on April 21, 2006. Magistrate Judge McCrorey filed an R&R on February 20, 2007. Although the Magistrate Judge found Bennett's claims were "not clearly stated," he found Bennett claimed (1) the Commission violated the Ex Post Facto Clause by using its guidelines (28 C.F.R. § 2.80) instead of the Board's guidelines in denying his parole, and (2) the Commission's delay in executing the parole violation warrant violated his Fifth Amendment right to due process. (*See* R&R at 6-7.) The Magistrate Judge recommended this court grant Respondent's Motion to Dismiss, or in the alternative, for Summary Judgment because (1) Bennett failed to show an ex post facto violation in the Commission's failure to grant him parole on his manslaughter conviction and (2) Bennett failed to show a due process violation. (*See* R&R at 9-10.)

## STANDARD OF REVIEW

### A.     Legal Standard for Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990).

### B.     Magistrate Judge's R&R

This court is charged with conducting a *de novo* review of any portion of the Magistrate Judge's R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that R&R. 28 U.S.C. § 636(b)(1). After a review of the entire record, the R&R, and Petitioner's objections, the court finds the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the court adopts the R&R and fully incorporates it into this Order.

### **ANALYSIS**

While the court has some difficulty understanding Petitioner's arguments, the court reads his objections to the R&R broadly to find an objection to the Magistrate Judge's determination that Bennett failed to show an ex post facto violation. Likening parole guidelines to sentencing guidelines, Petitioner argues "that the parole guidelines in effect at the time he first became eligible for parole should have been used at all of his previous parole hearings, because he had a reasonable expectation that he would finally be paroled under those guidelines." (Objections at 1-2.) Petitioner further argues,

> Petitioner Bennett, in the form of an objection, submits that since he has served to[o] long on his sentence, to effectively enhance his sentence, in the form of all of the sudden switching parole criteria and guidelines, cruelly violates his right to a reasonable expectation [that] had crystallized through the repetitive "hits" he received from each parole hearing. At his last hearing, to have all of the sudden switched to the federal parole guidelines is wrong.

(Objections at 2.)

7

With the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, 111 Stat. 712, "Congress transferred responsibility for the imprisonment of all felons convicted under the D.C. Code from the District of Columbia to the federal government." *Fletcher v. Reilly*, 433 F.3d 867, 870 (D.C. Cir. 2006). The Act also "transferred authority over any imprisoned felon who is eligible for parole or reparole under the D.C. Code from the D.C. Board of Parole to the U.S. Parole Commission." *Id.* (internal quotation marks omitted). The Act required the Commission to begin the process of assuming its new jurisdiction by August 5, 1998, and the Board was to be abolished once the transfer of authority was complete. *Id.* The Act gives the Commission the "exclusive authority to amend or supplement any regulation interpreting or implementing the parole laws of the District of Columbia with respect to felons, provided that the Commission adheres to statutory rulemaking procedures." *Id.* (internal quotation marks omitted). Pursuant to this authority, the Commission "undertook two rounds of rulemaking" in 1998 and 2000. *Id.*

As previously noted, Bennett objects to the Magistrate Judge's determination that Bennett failed to show an ex post facto violation.[4] An ex post facto law "is an enactment, criminal or penal in nature, which is retrospective and disadvantages the offender affected by it." *United States v. Mest*, 789 F.2d 1069, 1071 (4th Cir. 1986) (citing *Weaver v. Graham*, 450 U.S. 24 (1981)). The prohibition against ex post facto laws "bar[s] enactments which, by retroactive operation, increase the punishment for a crime after its commission." *Garner v. Jones*, 529 U.S. 244, 249 (2000). As

---

[4]Pursuant to the Constitution, "[n]o Bill of Attainder or ex post facto Law shall be passed." U.S. CONST. art. I, § 9, cl. 3. Furthermore, "[n]o State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts . . ." U.S. CONST. art. I, § 10, cl. 1.

the Supreme Court stated,

> Retroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept. Whether retroactive application of a particular change in parole law respects the prohibition on *ex post facto* legislation is often a question of particular difficulty when the discretion vested in a parole board is taken into account.

*Id.* at 250. The mere fact that a change in parole law occurred, however, does not establish an ex post facto violation. *See, e.g., Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 501-02 (1995) (concluding that a change in California law decreasing the frequency of parole suitability hearings under certain circumstances did not violate the Ex Post Facto Clause).[5] The "controlling inquiry" is "whether retroactive application of the change in . . . law create[s] 'a sufficient risk of increasing the measure of punishment attached to the covered crimes.'" *Garner*, 529 U.S. at 250 (quoting *Morales*, 514 U.S. at 509).[6]

---

[5] In *Morales*, the California law did not modify the statutory punishment for particular offenses, nor did it alter the standards for determining the initial date for parole eligibility or suitability for parole. *Morales*, 514 U.S. at 507. The amended law gave the parole board the discretion to decrease the frequency with which it considered parole for prisoners convicted of more than one homicide. *Id.* On these facts, the Court found that retroactive application of the law did not violate the Ex Post Facto Clause. *Id.* at 514.

[6] In *Garner*, the Court considered "whether the retroactive application of a Georgia law permitting the extension of intervals between parole considerations violates the *Ex Post Facto* Clause." *Garner*, 529 U.S. at 246. At the time the respondent Jones committed the offense, Georgia's Board of Pardons and Paroles Rules required parole reconsiderations every three years. *Id.* at 247. After Jones began serving his sentence, the Georgia Board amended its rules to require reconsideration at least every eight years. *Id.* While the Court of Appeals for the Eleventh Circuit found the law violative of the *Ex Post Facto* Clause, the Supreme Court reversed. While the Court noted the Georgia law was different from the California law in *Morales*, the Court found such differences were not dispositive. *Id.* at 251. The Court said, "The question is whether the amended Georgia Rule creates a significant risk of prolonging respondent's incarceration. The requisite risk is not inherent in the framework of [the] amended [r]ule . . . , and it has not otherwise been demonstrated on the record." *Id.* The Court found the respondent's claim to "rest[] upon speculation" because the record "contained little information bearing on the level of risk created by the change in law." *Id.* at 256. Because the Court could

As the Magistrate Judge noted in the R&R, "courts have routinely rejected ex post facto claims of D.C. offenders whose convictions occurred before implementation of the Commission's guidelines and became eligible for parole after their implementation." (R&R at 8.) As the United States District Court for the Southern District of West Virginia noted,

> The USPC contends . . . that the parole guidelines are not laws and therefore, cannot give rise to an *ex post facto* violation. The Fourth Circuit Court of Appeals has not determined whether or not the USPC parole guidelines constitute laws for *ex post facto* purposes. The majority of the Circuit Courts that have considered this issue however, agree with the USPS's proposition. . . . [T]he USPC parole guidelines do not constitute laws for purposes of *ex post facto* consideration. The guidelines operate only to provide a framework for the USPC's exercise of discretion.

*McKissick v. U.S. Parole Comm'n*, 295 F. Supp. 2d 643, 647 (S.D. W. Va. 2003), *aff'd*, 67 Fed. App'x 824 (4th Cir. 2003); *see also Sheary v. U.S. Parole Comm'n*, 822 F.2d 556, 558 (5th Cir. 1987) ("We have squarely held that there is no *ex post facto* violation in retroactive application of the Parole Commission guidelines." (internal quotation marks omitted)); *Inglese v. U.S. Parole Comm'n*, 768 F.2d 932, 935-36 (7th Cir. 1985) ("[W]e hold that the parole guidelines are not 'laws,' and therefore can be applied ex post facto without violating petitioner's constitutional rights."); *DiNapoli v. Ne. Reg'l Parole Comm'n*, 764 F.2d 143, 146 (2d Cir. 1985) (noting "federal parole guidelines . . . are not 'laws' within the meaning of the ex post facto clause").

Assuming, however, that parole guidelines constitute laws for ex post facto purposes, Bennett has not established a violation of the Ex Post Facto Clause. As a "speculative and attenuated possibility . . . of increasing the measure of punishment" is not enough, *Morales*, 514 U.S. at 509, the change must create a sufficient risk of increasing Bennett's punishment. *Garner*, 529

---

not determine whether retroactive application of the amendment "increases, to a significant degree, the likelihood or probability of prolonging respondent's incarceration," the Court reversed and remanded the case. *Id*. at 256-57.

U.S. at 250. The court finds such a risk is not present. In a Notice of Action letter dated May 17, 2001, the Commission stated as follows:

> Your previous score under the District of Columbia parole guidelines was 4. With adjustments reflecting your institutional record since your last hearing, your current score is 3. You continue to be scored under the 1987 guidelines of the D.C. Board of Parole. Those guidelines of the D.C. Board of Parole indicate that parole should be granted at this time. However, a departure from the guidelines and the rehearing guidelines at this consideration is found warranted because you are a more serious risk than your grid score indicates.

(Resp't Mot. to Dismiss Ex. O.) Bennett does not seem to complain about this determination. He complains about the Commission's Notice of Action dated August 23, 2005 in which the Commission denied parole on the manslaughter conviction pursuant to 28 C.F.R. § 2.80.

Bennett seems to argue that if the Commission applied the D.C. rules, not the Commission's rules, he would have been paroled on August 23. He has not made such a showing, however. Pursuant to the parole regulations adopted in 1987, the Board was able to "release a prisoner on parole in its discretion after the prisoner has served one-third of his sentence, provided that the prisoner substantially complied with prison rules, there was a reasonable probability the prisoner would not violate the law upon release, and releasing the prisoner would not be incompatible with the welfare of society." *Ellis v. District of Columbia*, 84 F.3d 1413, 1415 (D.C. Cir. 1996) (internal quotation marks omitted). The regulations permitted the Board to deviate from the outcome suggested by its scoring system in unusual circumstances. *Id*. at 1416.[7] As the United States Court of Appeals for the District of Columbia noted, the Board had extensive discretionary authority:

---

[7] The regulations listed reasons for denying parole despite a low total point score, and some of those reasons include repeated failure under parole supervision, history of repetitive sophisticated criminal behavior, unusually extensive and serious prior record (at least five felony convictions), "other," and "other change in circumstances." *See Ellis*, 84 F.3d at 1416; *see also* D.C. Mun. Regs. tit. 28, § 204.22, Appendix 2-1.

11

> Under § 204.22 of the regulations, if the Board wished to disregard the results of the scoring system it merely had to say so in writing. The Board is not required to either grant or deny parole based upon the score attained. The [District of Columbia's] Court of Appeals therefore made explicit what was implied in two of its recent parole decisions–namely, that the statute and the regulations vest substantial discretion in the Board to grant or deny parole . . .

*Id.* at 1419.[8]

In a Notice of Action dated January 10, 2005, the Commission noted it would apply 28 C.F.R. § 2.80 at Bennett's next hearing on the parole/reparole decision. (Resp't Mot. to Dismiss Ex. R.) Pursuant to 28 C.F.R. § 2.80, the Commission has the discretion to deny parole even if the guidelines indicate parole is warranted:

> The Commission may, in unusual circumstances, grant or deny parole to a prisoner notwithstanding the guidelines. Unusual circumstances are case-specific factors that are not fully taken into account in the guidelines, and that are relevant to the grant or denial of parole. In such cases, the Commission shall specify in the notice of action the specific factors that it relied on in departing from the applicable guideline or guideline range.

28 C.F.R. § 2.80(n)(1).[9] Thus, though Bennett's score may have indicated he would be paroled, the Commission has the discretion to depart from the guidelines.

Although the existence of discretion is not determinative, Bennett has not shown that the difference in how the Board and the Commission exercise discretion, if any, creates a sufficient or

---

[8] The two decisions referred to are *White v. Hyman*, 647 A.2d 1175 (D.C. 1994), and *Davis v. Henderson*, 652 A.2d 634 (D.C. 1995).

[9] Some factors that may warrant a decision above the guidelines include (but are not limited to) the following: (1) poorer parole risk than indicated by the score and (2) more serious parole risk. 28 C.F.R. § 2.80(n)(2). Within these two considerations are factors such as unusually persistent failure under supervision, unusually extensive prior record, prior record of violence more extensive or serious than taken into account in the guidelines, current offense demonstrates extraordinary criminal sophistication, and additional serious offenses committed after (or while on bond or fugitive status from) current offense that show unusual capacity for sustained, repeated violent criminal activity. *Id*.

substantial risk of prolonging his incarceration. *See Fletcher*, 433 F.3d at 876-77. The Notice of Action dated May 17, 2001 indicates the Commission denied parole pursuant to the Board's 1987 guidelines in spite of his score; the Commission found a departure from the guidelines warranted because (1) "[t]he current offense represents repetitive and ongoing assaultive behavior," (2) Bennett committed murder within 70 days of being reparoled a third time, and (3) the murder "demonstrated extreme homicidal vindictiveness." (Resp't Mot. to Dismiss Ex. O.) As many of the factors regarding whether to depart upward are substantially similar under both sets of guidelines, Bennett has not demonstrated a sufficient risk of a prolonged incarceration. Finding no genuine issue of material fact as to whether the application of the Commission's guidelines constitutes a violation of the Ex Post Facto Clause, the court grants Respondent's Motion for Summary Judgment.

## CONCLUSION

It is therefore **ORDERED**, for the foregoing reasons, that Respondent's Motion for Summary Judgment is **GRANTED**.

**AND IT IS SO ORDERED**.

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**March 13, 2007**